Lawrence I. WECHSLER,

v.

MACKE INTERNATIONAL TRADE, INC.,

and

Anthony O'Rourke

No. CV–00–00296CAS.

United States District Court, C.D. California.

Jan. 6, 2005.

See also 327 F.Supp.2d 1139.

Thomas F. Smegal, Paul N. Conover, Irfan A. Lateef, Knobbe, Martens, Olson & Bear, San Francisco and Irvine, CA, for plaintiff.

Conrad Solum, Fulbright and Jaworski, Los Angeles, CA, for defendant Macke.

1. The amended complaint added defendant Petsmart, Inc. All claims against defendant Petsmart, Inc., and Petsmart Inc.'s counterclaim against

PROCEEDINGS: PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING PERSONAL LIABILITY OF DEFENDANT ANTHONY O'ROURKE (filed November 12, 2004)

SNYDER, District Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Lawrence I. Wechsler. ("Wechsler") is the inventor of a portable device for feeding animals, for which he owns U.S. Patent No. 5,636,592 ("the '592 patent"), issued on June 10, 1997. In this action, Wechsler alleges that defendants Macke International Trade, Inc. ("Macke") and Anthony O'Rourke ("O'Rourke"), Macke's President and Secretary, have infringed the '592 patent by "importing, using, offering for sale, and selling in the United States, two different products, the 'Handi–Drink' and the 'Handi–Drink 4' products as well as inducing infringement of the '592 patent." Plaintiff's Statement of Genuine Issues of Material Fact, filed on January 23, 2004, at ¶ 1; *see also* defendants' Statement of Uncontroverted Facts, filed on January 8, 2004, at ¶ 2. Wechsler filed the original complaint in this action on July 19, 1999, and a first amended complaint on May 8, 2000, asserting claims against defendants for patent infringement in violation of 35 U.S.C. § 271(a), and against O'Rourke and Macke for inducing patent infringement pursuant to 35 U.S.C. § 271(b).[1]

On February 13, 2002, the Court granted defendants' motion for summary judgment of non-infringement of the '592 patent. On January 29, 2003, the Federal Circuit reversed the Court's grant of summary judgment of non-infringement with respect to Handi–Drink 1, and affirmed the Court's grant of summary judgment of non-infringement with respect to Handi–Drink 2. On November 25, 2003, the Court denied defendants' motion for summary judgment as to the claimed invalidity of the '592 patent.

On January 8, 2004, defendants moved for summary judgment seeking the dismissal of

plaintiff were dismissed with prejudice on July 7, 2003.

O'Rourke. On February 26, 2004, the Court granted in part and denied in part defendants' motion. The Court determined that a genuine issue of material fact existed as to whether a reasonable jury could infer that O'Rourke possessed the specific intent to induce infringement necessary for liability under 35 U.S.C. § 271(b).[2] The issues of Macke's willful infringement of the '592 patent, damages, and O'Rourke's personal liability for inducing infringement of the '592 patent were tried to the jury on October 5, 6, 7, 8, 12, and 13, 2004. On October 13, 2004, the jury returned its special verdicts. On the Special Verdict Form, the jury answered the questions below as follows:

1. Do you find that Mr. Wechsler has shown by a preponderance of evidence that Mr. O'Rourke is personally liable for infringement of the Wechsler patent?

"YES" is a finding for Mr. Wechsler. "NO" is a finding for Mr. O'Rourke.

YES _____    NO X

2. Do you find by clear and convincing evidence that Defendants have willfully infringed based upon Defendants becoming aware of the content of the Wechsler patent in 1997 through the meetings between Mr. Woods and Mr. O'Rourke and his representatives, and thereafter commencing sales of the original Handi–Drink?

"YES" is a finding for Mr. Wechsler. "NO" is a finding for Mr. O'Rourke.

YES _____    NO X

3. Do you find by clear and convincing evidence that Defendants have willfully infringed based upon Defendants becoming aware of the content of the Wechsler patent in April 1999 and then continuing to sell the original Handi–Drink?

"YES" is a finding for Mr. Wechsler. "NO" is a finding for Mr. O'Rourke.

YES X    NO _____

4. What are the total damages owed to Mr. Wechsler for the infringement of the Wechsler patent?

LOST PROFITS: $ 630,600

REASONABLE ROYALTY: $ 25,535

TOTAL: $ 656,135

On October 27, 2004, the Court entered its judgment on the verdict.[3] On November 12, 2004, plaintiff filed a renewed motion for judgment as a matter of law regarding the personal liability of O'Rourke. The Court heard oral argument on December 13, 2004, and took the matter under submission.

## II. STANDARD

█ Judgment as a matter of law is proper "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion and that conclusion is contrary to the jury's." *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1460 (9th Cir.1993). Judgment as a matter of law is improper if there is substantial evidence to support the jury's verdict. *See Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d

**2.** In an order dated September 13, 2004, the Court denied defendants' motion for reconsideration of its denial of summary judgment as to O'Rourke.

**3.** The Court's judgment ordered as follows:
  1. That the manufacture, sale, offer to sell, use, and/or importation of the Handi–Drink 1 and "hinged" Handi–Drink 4 products infringe claims 1, 2, 3, 11, 12, 14, 18, 19 and 20 of the '592 Patent;
  2. That claims 1, 2, 3, 11, 12, 14, 18, 19, and 20 of the '592 Patent are not invalid;
  3. Plaintiff Lawrence I. Wechsler is owed the sum of $653,135 as compensatory damages for the infringement of the '592 patent, with interest thereon to be later determined by the Court; and

  4. That determination of any award of enhanced damages under 35 U.S.C. § 284, attorney fees under 35 U.S.C. § 285, costs under Fed.R.Civ.P. 54(d)(1), and the scope of an injunction against further infringement, shall be later made by the Court, upon motion.

Following an objection to the form of judgment by counsel for defendants, on November 1, 2004, the Court ordered plaintiff's counsel to lodge a proposed amended judgment, nunc pro tunc, that included the following language: "Defendant Anthony O'Rourke is not personally liable for infringement of the '592 Patent" and "Defendants have willfully infringed based upon becoming aware of the content of the Wechsler patent in April 1999 and then continuing to see the original Handi–Drink."

1001, 1014 (9th Cir.1985). " 'Substantial evidence' is admissible evidence that reasonable minds might accept as adequate to support a conclusion." *Davis v. Mason County*, 927 F.2d 1473, 1486 (9th Cir.1991).

In considering a motion under Rule 50, the court does not assess the credibility of witnesses, and does not "weigh the evidence, but [instead] draws all factual inferences in favor of the nonmoving party." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir.1987); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990). Finally, the court may not substitute its judgment of the facts for the judgment of the jury. *Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944).

## III. DISCUSSION

Wechsler argues that the Court should overturn the jury's verdict as to O'Rourke's lack of personal liability for inducing infringement because the evidence demonstrates that O'Rourke knew of the '592 patent, aided and abetted Macke in infringing it, and knew that infringement by Macke was likely to result. Mot. at 3–5. Wechsler also argues that "[d]efendants presented no legally sufficient evidence in rebuttal." *Id.* at 5.

In support of its argument, Wechsler asserts that O'Rourke by his own admission "personally designed, developed, marketed, and distributed the infringing products," that he licensed all his inventions to Macke and acted as a consultant in marketing them, and that he was the sole owner, operator, employee, and decisionmaker for Macke. *Id.* at 6 (citing 10/7/04 Trial Tr. at 47–48, 51, 63–65,

104–05, and Trial Exh. 93). Plaintiff also asserts that O'Rourke and his patent attorney, Richard Lyon ("Lyon"), conceded that they evaluated the '592 patent "at least as early as April 1999," and thus "had detailed knowledge of the '592 patent during nearly the entire infringement period." *Id.* at 7.

Wechsler further contends that O'Rourke's behavior after learning of the '592 patent demonstrates that he believed that Macke was infringing the '592 patent. *Id.* Specifically, Wechsler cites to (1) O'Rourke's instruction to Lyon to investigate whether there was any uncited prior art that would render the '592 patent invalid; (2) O'Rourke's subsequent instruction to Lyon to inquire anonymously of Wechsler whether he would license the '592 patent; and (3) a letter from O'Rourke's present counsel, Conrad Solum, following plaintiff's refusal to grant O'Rourke a license, "discussing the possibility of changing the original Handi–Drink to avoid infringement"; and (4) Solum's refusal to provide a non-infringement opinion on the Handi–Drink in a letter to O'Rourke discussing the Handi–Drink 2.[4] *Id.* at 7–8 (citing 10/7/04 Trial Tr. at 69; 10/06/04 Trial Tr. at 23–24; Trial Exh's 53, 55) (emphasis removed). Wechsler also argues that O'Rourke's testimony at trial that he did not believe the original Handi–Drink infringed the '592 patent was insufficient as a matter of law to rebut Wechsler's showing of bad faith, and was contradicted by other testimony by both O'Rourke and others. *Id.* at 9–11.[5] Wechsler further argues that O'Rourke's pattern of alleged factual misrepresentations in his depositions, as shown at trial, completely undermines the credibility of his testimony as to his state of mind during the infringement period. *Id.* at 11–12.[6]

---

**4.** The letter in fact states, "Although we do not conceed [sic] that your original Handi–Drink product infringes the Wechsler Patent or at least any valid claim therein, it seems prudent to consider a redesign that potentially could end the controversy." Trial Exh. 55 at 2.

**5.** Wechsler cites testimony that O'Rourke realized the need to design around the '592 patent and O'Rourke's testimony as to why he continued to sell the Handi–Drink even after learning of the '592 patent, and asserts that he continued to sell the infringing Handi–Drink because Macke had "substantial orders" from customers.

Mot. at 10–11 (citing 10/8/04 Trial Tr. at 15–16, 21, and 10/7/04 Trial Tr. at 85–86).

**6.** Wechsler also asserts that Macke's assets and revenues are funneled directly into O'Rourke's personal accounts, and that the jury's finding against O'Rourke's liability "may allow O'Rourke, as corporate officer, to evade his obligation to satisfy the judgment from Macke by diverting assets to O'Rourke the individual." Mot. at 13–14.

Finally, Wechsler points to the apparent inconsistency in the Special Verdict Form based on the jury's finding of no personal liability for O'Rourke and its finding that "Defendants" (in the plural) willfully infringed the '592 patent. *Id.* at 12. Plaintiff argues that the finding of willful infringement "confirms that the jury believed O'Rourke acted in bad faith," since "O'Rourke was the only person through whom Macke was capable of performing any good faith belief." Reply at 4–5.

Defendants respond that substantial evidence supports the jury's finding that O'Rourke was not personally liable for infringement of the '592 patent.[7] Opp. at 3. They assert that, as established at trial, upon first learning of the '592 patent in April 1999, O'Rourke immediately requested Lyon to assess the validity of the patent and search for prior art. *Id.* at 10 (citing 10/7/04 Trial Tr. at 65–68). Further, defendants cite evidence that O'Rourke evaluated the '592 patent, as well as other patents that he considered to be prior art, and formed a good faith belief that Macke was not infringing the '592 patent by manufacturing the Handi–Drink. *Id.* at 10–11 (citing 10/7/04 Trial Tr. at 67, 82–84).[8] As to the request for a license of the '592 patent, defendants cite evidence of ongoing negotiations and correspondence between plaintiff and Lyon through July 1999, indicating that plaintiff was "still considering the possibility of licensing or selling his patent" or at least giving defendants the impression that such a possibility still existed. *Id.* at 11–12 (citing Trial Exh's 51, 52, 53).[9] Defendants also note that plaintiff's counsel had the opportunity at trial to challenge O'Rourke's testimony as to his belief concerning the validity and infringement of the '592 patent. *Id.* at 17.

■ The Court recognizes that an inconsistency may arguably exist in the special verdicts returned by the jury, and that the Court "has a duty to reconcile the jury's special verdict responses on any reasonable theory consistent with the evidence." *Pierce v. S. Pac. Transp. Co.,* 823 F.2d 1366, 1370 (9th Cir.1987) (citing *Gallick v. B & O R.R.,* 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963)). In this case, the jury was instructed that the "defendants" were "Macke International Trade, Inc., and Anthony O'Rourke." In Special Verdict No. 2, the jury found under a clear and convincing evidence standard of proof that the "Defendants" had not wilfully infringed the '592 patent in 1998. In Special Verdict No. 3, the jury found under a clear and convincing evidence standard that the "Defendants" had willfully infringed the '592 patent in 1999.

The Federal Circuit previously determined in its January 2003 decision that the "Handi–Drink" infringed the '592 patent. Jury Instruction Nos. 17, 18 and 19 are most relevant for purposes of construing the verdict. Instruction Nos. 17 and 19 both address what the jury must find to conclude that O'Rourke was personally liable for inducing infringement of the '592 patent. More particularly, Instruction No. 17 sets forth the elements that must be established to prove that a person had induced patent infringement. Instruction No. 19 then sets forth the circumstances under which a corporate officer may be liable for inducing patent infringement. Both instructions require a form of scienter.

Question No. 1 on the verdict form, quoted above, asks whether O'Rourke is personally liable for inducing infringement of the '592 patent. Question Nos. 2 and 3 of the verdict form, also quoted above, then proceed to ask whether the jury found that "Defendants" willfully infringed the '592 patent in 1997 and 1999, respectively.

---

**7.** Defendants note at the outset that plaintiff did not bring a motion for JMOL to overturn the jury's finding that defendants did not willfully infringe the '592 patent based on awareness of the patent in 1997 as a result of O'Rourke's meetings with John Woods (Special Verdict No. 2), and contend that it is therefore undisputed that O'Rourke first learned of the '592 patent in April 1999. Opp. at 2–3.

**8.** Defendants also refer to the Court's initial holding on summary judgment that the Handi–Drink did not infringe the '592 patent, although that holding was reversed by the Federal Circuit. Opp. at 13.

**9.** Plaintiff responds that O'Rourke's failed attempt to obtain a license is evidence of bad faith, in that it suggests he knew Macke was infringing the '592 patent. Reply at 6–7.

The Court finds that the jury did not intend to find that there was a willful infringement in 1997 when Wechsler claimed O'Rourke had first become aware of the '592 patent after Lyon met with Woods and reviewed the Woods patent file, but that the jury did intend to find a willful infringement in 1999 when Lyon was advised of the existence of the '592 patent by the patent examiner. Not only is this conclusion supported by the evidence and the arguments of counsel at trial, but it is also explained by the fact that while the special verdict form differentiated between the events of 1997 and 1999 for purposes of willful infringement, it did not do so with regard to the question of whether O'Rourke was personally liable for inducing infringement of the '592 patent.

In this case, it is not contended by any party that there was evidence that the acts of Macke could have been conducted through any person other than O'Rourke. Macke's scienter was completely dependent on O'Rourke's state of mind. In the motion now before the Court, Macke does not argue that it did not wilfully infringe the '592 patent in 1999, or that the verdict should be set aside as to Macke. That being the case, the record fully supports and makes reasonable the conclusion that the jury intended to find O'Rourke personally liable for infringing the '592 patent in 1999, but not in 1997.

Viewed differently, were the Court to adopt O'Rourke's view of the verdict, it would be required to find Macke liable for willful infringement and exonerate O'Rourke, the only person through whom Macke acted. This result would be inconsistent and unreasonable because the record does not support any finding that Macke acted independently of O'Rourke. As a consequence, the Court concludes that the most reasonable construction of the verdict is that the jury intended to find that O'Rourke is personally liable for inducing the infringement of the '592 patent in 1999, but not 1997.

## IV. CONCLUSION

For the reasons discussed above, plaintiff's renewed motion for judgment as a matter of law regarding the personal liability of O'Rourke is GRANTED.

IT IS SO ORDERED.