NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CALICO BRAND, INC. AND HONSON MARKETING GROUP, INC.,**
*Plaintiffs-Appellants,*

**v.**

**AMERITEK IMPORTS, INC.,**
*Defendant,*

**AND**

**ACME INTERNATIONAL ENTERPRISES, INC.,**
*Defendant-Cross Appellant.*

---

2008-1324, -1341

---

Appeal from the United States District Court for the Central District of California in No. 05-CV-0205, Judge Patrick J. Walsh.

---

Decided: July 18, 2013

---

R. JOSEPH TROJAN, Trojan Law Offices, of Beverly Hills, California, argued for plaintiffs-appellants. With him on the brief was DYLAN C. DANG.

TRACY ZURZOLO QUINN, Reed Smith, LLP, of Philadelphia, Pennsylvania, argued for defendant-cross appellant. With her on the brief were CARL H. PIERCE, MATTHEW P. FREDERICK, KHURRAM N. GORE; and JAMES C. MARTIN and KEVIN S. KATONA, of Pittsburgh, Pennsylvania.

------

Before DYK, PROST, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

This appeal arises from a patent infringement suit brought by Calico Brand, Inc. and Honson Marketing Group, Inc. (collectively, "Calico") against Ameritek Imports, Inc. ("Ameritek") and Acme International Enterprises, Inc. ("Acme"). A jury found that Ameritek and Acme willfully infringed Calico's claims for patented safety mechanisms on a utility lighter and that Calico was entitled to lost profits as compensation for the infringement. The district court ruled on post-trial motions, granting judgment as a matter of law ("JMOL")[1] that Acme's infringement was not willful and denying Acme's request for a new trial on damages issues.

Calico contends that the United States District Court for the Central District of California ("district court") erred when it set aside the jury verdict that the infringement was willful. Acme cross-appeals on the issue of damages, arguing that the jury's award of lost profits should have been overturned. We *affirm* the district

------

[1] Federal Rule of Civil Procedure 50 was amended in 1991 to substitute the uniform term "judgment as a matter of law" in place of "judgment notwithstanding the verdict" and "directed verdict." The district court employed the outdated term, but we understand the post-trial rulings as responsive to the parties' renewed motions for judgment as a matter of law or, alternatively, for a new trial.

court's determination to set aside the jury verdict of willful infringement. We *reverse* the district court's determination that lost profits were an available form of damages and *vacate* the award of lost profits. We instruct the district court to enter judgment awarding damages in the form of a reasonable royalty. Accordingly, we *affirm-in-part*, *reverse-in-part*, *vacate-in-part*, and *remand* for the limited purpose discussed herein.

## I. BACKGROUND

### A. The Asserted Patents

Calico, a manufacturer of cigarettes and household utility lighters, is the assignee of U.S. Patent Nos. 6,318,992 ("the '992 Patent"), 6,325,617 ("the '617 Patent"), and 6,814,569 ("the '569 Patent"), (collectively, "patents in suit"). Calico's utility lighters are commonly used to light candles and fireplaces in homes and consumers recognize them as having an extended lighting rod. Figure 3 of the '569 Patent is exemplary:



The district court found that "[a]ll three patents describe essentially the same invention." J.A. 98. Specifically, the patents are directed to utility lighters with child-resistant mechanisms that comport with federal safety requirements. Each patent claims a device comprised of a safety mechanism with a trigger, a locking lever, and a safety button. The claimed invention is not the utility lighter as a whole, but rather a combination of components comprising a lock mechanism that allows a user to operate a lighter in a safe, non-complicated manner. *See* '992 Patent col. 3 ll. 27-33; '617 Patent col. 5 ll.

44-45; '569 Patent col. 5 ll. 46-51. Claim 1 of the '992 Patent recites:

> 1. A utility lighter comprising: a lighter housing, a lighting rod projecting from the lighter housing, a fuel tank, located within the lighter housing, a valve, being spring loaded so as to be urged into the closed position, for releasing fuel, a gas tube connected to the valve and extending through the lighting rod, and a conventional piezoelectric unit for generating a spark;
>
>> a trigger, slidably mounted in the lighter housing, having an exterior surface capable of being engaged by a user for slidably activating the piezoelectric unit, said trigger also having an interior portion positioned substantially within said lighter;
>>
>> a locking mechanism comprising a locking lever, a locking spring, and a stopper tab;
>>
>> said locking lever extending from said interior portion of said trigger and having a top surface with a first elevation and a second elevation;
>>
>> said locking spring capable of urging the locking lever into a position so that the locking lever is biased against the stopper tab to prevent said trigger from sliding a sufficient distance to engage said piezoelectric unit;
>>
>> a safety button, which is slidably mounted on said housing and capable of moving in a substantially parallel but opposite direction to said trigger;

said safety button having a contact surface, a fuel release segment and a unlocking segment;

said contact surface capable of manipulation by a user so that said fuel release segment opens said valve to release fuel while the unlocking segment substantially and simultaneously moves from a position in which it is in contact with said first elevation of said locking lever to a position in which the fuel release segment is in contact with the second elevation of said locking lever to a position in which the fuel release segment is in contact with the second elevation of said locking lever whereby said locking lever is caused to move out of interference with the stopper tab permitting said activation of said piezoelectric unit by said trigger to ignite the fuel being released from said valve.

'992 Patent, col. 6 ll. 30-65.

The written description acknowledges that utility lighters have become "prevalent in modern times" and are a well-known means of producing a flame. *See* '992 Patent col. 1 ll. 11-17; '617 Patent, col. 1 ll. 36-41; '569 Patent, col. 1 ll. 41-46. The patents address a need in the prior art "to equip utility lighters with safety features" that prevent against accidents in the event the lighters are put in the hands of an inexperienced person, especially young children. '569 Patent col. 1 ll. 56-59. Previous inventions attempted to address safety-related concerns, but the unique structural improvements in the Calico patents "make[] it very difficult, if not impossible, for young children to operate the [utility lighter]." '992 Patent col. 2 ll. 27-31; '617 Patent col. 2 ll. 51-54; '569

Patent col. 2 ll. 59-60. To that end, the "primary object of the invention is to provide a safety mechanism for utility lighters." '992 Patent col. 3 ll. 11-12; '617 Patent col. 3 ll. 52-54; '569 col. 3 ll. 58-59. The preferred embodiments, as illustrated in Figures 6 and 7, are representative of an application of the claims:



The figures, like the description of individual components, offer mechanical teachings such as automatic locking that prevents accidental use, and prevents young children from pressing the trigger and operating the lighter. *See* '992 Patent col. 3 l. 65 to col. 4 l. 1; '617 Patent col. 5 l. 66 to col. 6 l. 3; '569 Patent col. 6 ll. 4-9.

## B. Procedural History

We begin by reviewing pre-trial events that are relevant to this appeal. Before filing its Complaint, Calico

contacted both Ameritek and Acme in 2004 and gave notice of alleged infringement. At that time, Ameritek was an importer of consumer products from China, which it sold to distributors and/or retailers. Ameritek sold imported utility lighters to Acme, who in turn, distributed the utility lighters to retailers.

On October 22, 2004, counsel for Calico wrote to Acme and demanded that Acme cease and desist from distributing infringing lighters. J.A. 94−95. Calico also demanded that Acme disclose import, inventory, and sales records for the Signature Series utility lighters. *Id.* at 95. Calico stated that it would not hesitate to file a patent infringement suit and seek treble damages and attorneys' fees if Acme failed to respond. *Id.* Acme's President, Emil Giliotti, called William Tu at Ameritek to discuss Calico's cease and desist letter. Acme memorialized the conversation in a letter dated November 2, 2004 in which Acme sought reassurance that Ameritek would indemnify any damages awarded against Acme and also requested that Ameritek immediately set forth a non-infringement position. Ameritek ultimately failed to articulate a non-infringement position, causing Acme to return its inventory of accused lighters to Ameritek and demand a refund. J.A. 122−23. The letter clarifies that the return of the inventory was connected to Calico's infringement allegations: "[s]hould Ameritek reach an agreement with Calico that enables Ameritek to sell the gas lighters, then Acme will repurchase the inventory in question from Ameritek as long as it is able to sell it to its customers." J.A. 122. Three days after the November 2, 2004 letter, while waiting on Ameritek's response, Acme allegedly sold 74,556 units of product that Calico contends were infringing lighters.

Calico filed suit against Ameritek and Acme in January 2005, alleging willful infringement of claim 1 of all three patents. During discovery, Ameritek conceded that the imported lighters met every limitation of the asserted claims. J.A. 143 (response to Calico's Requests for Admission). With infringement established, Calico moved for

summary judgment on the validity of the patents in suit and defendants cross-moved to invalidate the patents. The district court considered defendants' invalidity challenges, and found that the patents were neither anticipated nor obvious as a matter of law. *See* J.A. 96−113. At trial, the jury was instructed to consider only whether defendants' infringement was willful and to determine an appropriate amount of damages to compensate for the infringement.

The jury returned a verdict finding willful infringement and that Calico was entitled to lost profits from Ameritek in the amount of $719,395 and from Acme in the amount of $178,035. The jury also determined that Ameritek should pay a reasonable royalty in the amount of $113,471 and that Acme should pay a reasonable royalty in the amount of $23,250.

Both parties filed post-trial motions. The district court overturned the jury's finding of willful infringement for both defendants, concluding as a matter of law that there was no substantial evidence that defendants knew of the patents in making sales before October 22, 2004, and that they were objectively reckless in their conduct. J.A. 8−9. The district court agreed with the jury that Calico was entitled to lost profits, and entered final judgment consistent with the jury's lost profits award. J.A. 1−2. The final judgment states that the award is joint and several, meaning that if either Ameritek or Acme was unable to satisfy their obligations, the co-defendant would be liable for the remaining balance. *Id.*

After defendants filed a notice of appeal with this court, Ameritek filed for bankruptcy. Appellant Br. 6. At the outset of the bankruptcy proceedings, this appeal was stayed pursuant to 11 U.S.C. § 362. *Id.* Following the bankruptcy proceedings, Ameritek was dismissed from this appeal. Thus, Acme is the only remaining defendant/cross-appellant and the issues before us only relate to Acme. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1295(a)(1).

## II.  DISCUSSION

This court reviews the grant or denial of a motion for JMOL or for a new trial under the law of the regional circuit of the district court, which in this case is the Ninth Circuit.  *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005).  The Ninth Circuit reviews a district court's order granting or denying a motion for JMOL without deference.  *See Janes v. Wal-Mart Stores Inc.*, 279 F.3d 883, 886 (9th Cir. 2002);  *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1460 (9th Cir. 1993).  A JMOL is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.  *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002); *McLean v. Runyon*, 222 F.3d 1150, 1153 (9th Cir. 2000).  The resolution of a motion for a new trial is reviewed for abuse of discretion.  *Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, 702 F.3d 1351, 1358 (Fed. Cir. 2012) (applying Ninth Circuit law); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1005 (9th Cir. 2004).

Each party presents only one issue on appeal.  Calico challenges the district court's willfulness determination.  Acme challenges the district court's award of damages in the form of lost profits.  We take each issue in turn.

### A.  Willful Infringement

In order to make the requisite showing for willful infringement, Calico must show by clear and convincing evidence that Acme "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech.*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).  It must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l., Inc.*, 711 F.3d 1348, 1357 (Fed. Cir. 2013) (quoting *Seagate*, 497 F.3d at 1371).  We review the legal question of whether the infringing conduct was

objectively reckless without deference, and we review for substantial evidence the factual question of whether the risk presented to Acme was either known or so obvious that it should have been known. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1006–07 (Fed. Cir. 2012).

In this case, the district court analysis centered on the second prong of the *Seagate* standard. The court reversed the jury's finding of willful infringement because it believed there was no indication that Acme infringed despite knowledge of an objectively-defined risk that its actions constituted infringement of Calico's patents. The court analyzed uncontroverted evidence presented at trial and concluded that there was no showing that Acme had knowledge of Calico's patents at the time it was selling the infringing Ameritek lighters before October 22, 2004. Rather, the district court found that, when informed of Calico's patents, Acme switched to selling readily-available non-infringing lighters and returned the inventory of infringing lighters to Ameritek. J.A. 9. Weighing the totality of the evidence, the district court determined that "[p]erhaps Acme should have done more to ensure that Ameritek was not selling [it] infringing goods," but that this failure constituted, at most, negligent conduct. *Id.*

Calico first addresses the facts and circumstances discussed by the district court in its post-trial opinion, arguing that the utility lighters Acme purchased from Ameritek were sold as "cheap knock-offs" of its products and Acme willfully infringed by not investigating the differences between the patented products and the accused lighters. Contrary to Calico's contention that Acme neither knew nor cared whether the purchased Ameritek lighters were infringing, the record shows that when Acme learned of its potential liability for infringement, it immediately demanded assurances from Ameritek that the products did not infringe and stated it would return its inventory of accused products to Ameritek, which it eventually did. J.A. 120−21; J.A. 186 (testimony stating

that Acme planned to return inventory because it did not want to buy infringing products). Based on this spartan record, the district court was correct to conclude that the jury's finding that Acme's conduct was willful was not supported by substantial evidence.

Calico makes a second argument to this court—requesting that we reinstate the jury's verdict based on a November 2004 report ("Lot Tracking document"). Calico represents that the Lot Tracking document shows that Acme sold four lots of products (74,556 lighters) to its customer, Linens N Things, days after Acme's President learned of the patents in suit, and that a decision to continue selling the accused products after receiving notice of the infringement allegations demonstrates Acme's reckless disregard for the patents. Even if we assume that the jury awarded damages for those 74,556 lighters, the record does not establish willful infringement with respect to those sales.

The district court did not discuss the Lot Tracking document in the post-trial ruling, but this omission is consistent with our review of the record, which indicates that the Lot Tracking document was not relied on at trial in connection with allegations of willful infringement. Indeed, Calico does not point to any citation in the record suggesting that the jury considered the Lot Tracking document as evidence of willful infringement.

We agree with Acme that the Lot Tracking document does not establish willful infringement.[2] Because the

---

[2]     During trial, the Lot Tracking document was discussed only for purposes of substantiating Calico's damages demand. *See* J.A. 236 (relying on the Lot Tracking document for calculation of accused sales from 2003 through 2004). Calico chose to focus its willful infringement allegations on Acme's failure to investigate whether the products it buys from third parties are infringing and

document does not establish basic facts—such as whether the products sold were infringing lighters or non-infringing alternatives—it is facially insufficient to prove willful disregard for Calico's patent rights. As Acme points out, the Lot Tracking document was admitted outside the presence of the jury for the purpose of establishing damages. After counsel stipulated to its admission, Calico did not solicit relevant testimony about as to its contents. Mr. Giliotti—the lone witness testifying about the Lot Tracking document—was asked what the Lot Tracking document represented, and he testified that he did not know other than it was prepared by his financial people. J.A. 181−82. Mr. Giliotti could not testify whether the Lot Tracking document reflected "sales or purchases of utility lighters." J.A. 182. Mr. Giliotti was not asked, and therefore provided no testimony, whether the November 2004 Lot Tracking shipment purportedly destined for Linens N Things, was of infringing lighters or alternative non-infringing lighters.

Because it does not establish sales of infringing lighters, the Lot Tracking document does not establish that Acme willfully infringed by selling Ameritek lighters after being notified of Calico's patents. On its face, the Lot Tracking document is bereft of identifying information that demonstrates what goods, if any, were actually sold. J.A. 124. It similarly fails to indicate that the products were sourced from Ameritek. Details such as product identity and source are particularly relevant here because Acme established that during the period it sold infringing lighters, it was simultaneously selling non-infringing lighters not obtained from Ameritek. J.A. 184. Without more, the record does not constitute clear and convincing evidence of willful infringement. We *affirm* the district court's determination that the jury's willful infringement finding was not supported by substantial evidence.

---

to seek indemnification from its suppliers. *E.g.*, J.A. 233−35.

## B.　Lost Profits

We next address the district court's legal analysis regarding the award of lost profits as compensation for Acme's infringement.　The availability of lost profits is a question of law we review de novo.　*Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1287 (Fed. Cir. 2011).　To recover lost profits, a patent owner "must show causation in fact, establishing that but for the infringement, he would have made additional profits."　*Id.* (internal quotation marks omitted) (quoting *Wechsler v. Macke Int'l Trade, Inc.*, 486 F. 3d 1286, 1293 (Fed. Cir. 2007)); *see also Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995) (en banc) (stating the applicable standard of review).　In general, a patent owner must prove causation in fact by showing (1) a demand for the patented product, (2) an absence of acceptable non-infringing substitutes, (3) the manufacturing and marketing capability to exploit the demand, and (4) the amount of profit the patent owner would have made ("the *Panduit* factors").　*Rite-Hite*, 56 F.3d at 1544 ("*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, (6th Cir.1978), articulated a four-factor test that has since been accepted as a useful, but non-exclusive, way for a patentee to prove entitlement to lost profits damages.").

The district court ruled on Calico's theory of lost profits twice.　First, in a summary judgment decision, the district court agreed with Calico that there was a triable issue as to lost profits as a measure of damages.　Yet, in reaching this conclusion, the district court acknowledged that the patented safety mechanism was not driving Calico's performance in the marketplace:

> The parties agree that there are other noninfringing utility lighter products in the marketplace. Neither party has put forth evidence showing that consumers distinguish between the various utility lighters based on product features.　Thus, Plaintiffs are not claiming that their patented safety

mechanism has drawn customers to purchase their specific products.

J.A. 114.

Second, after the jury awarded lost profits, the district court considered Acme's motion for JMOL or, alternatively, for a new trial. It considered the four *Panduit* factors, concluding that the evidence demonstrated that Calico lost sales due to defendants' infringement. For the reasons discussed herein, we conclude that the district court improperly permitted the jury to consider lost profit damages, and that it erred in denying Acme's motion for JMOL.

### 1. Customer Demand

Focusing on the first *Panduit* factor, Acme argues that the district court erred in finding lost profits to be an available form of damages because the child safety features claimed in the patents in suit are divorced from consumer demand. Acme points to evidence indicating that the only distinguishing feature influencing consumers to buy the infringing lighters over the Calico lighters was price. Appellee Br. 31 (citing J.A. 166).

Calico responds that the evidence supports the conclusion that "but for" the infringement, Calico would have maintained its market share of 28.4% and would not have experienced a 7% decrease in sales during the period of infringement.

In each of the district court's rulings, it overlooked well-established precedent requiring "a causal relation between the infringement and its lost profits." *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003) (quoting *BIC Leisure, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993)). In *Rite-Hite*, we explained that lost profits must be tied to the intrinsic value of the patented feature. *See* 56 F.3d at 1548−50. We have also held that demand for the entire apparatus is, in most circumstances, not interchangeable with demand for a patented component of the larger apparatus. *Uniloc USA,*

*Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337−38 (Fed. Cir. 2009).

Here, the district court credited testimony regarding accounting records for sales of Calico utility lighters as sufficient evidence of customer demand. J.A. 11. We disagree that evidence of gross sales data is sufficient under the *Rite-Hite* framework to establish consumer demand based on the patented safety mechanism.

Indeed, the lack of demand for the patented safety mechanism is reflected in the summary judgment ruling, where the district court acknowledges that Calico made no attempt to argue that the safety mechanism drives demand for its specific product. J.A. 114. The patents in suit are directed to a safety mechanism with a trigger, a locking lever, and a safety button, but Calico never explored the commercial benefits of these features and elicited no testimony to distinguish between the value of the patented and unpatented features. Specifically, Calico's Vice President of Sales and Marketing conceded that Calico had no documentation showing that consumers preferred the Calico safety mechanism to an alternative mechanism found in competitors' products. J.A. 169−70. While the record lacks evidence that the patented feature drove customer demand, evidence was presented that the most salient driver of customer demand seemed to be the utility lighter's price. J.A. 166. The district court's conclusion on the first *Panduit* factor was error. We next turn to the second *Panduit* factor.

### 2. Acceptable Non-infringing Alternatives

The district court did not make specific findings concerning the second *Panduit* factor—a requirement of no acceptable non-infringing alternatives. Instead, it generally referred to a line of cases holding that "a patent owner may satisfy the second *Panduit* element by substituting proof of its market share for proof of the absence of acceptable substitutes." J.A. 11 (citing *BIC Leisure*, 1 F.3d at 1219).

Acme argues that, as legal matter, lost profits are not available because non-infringing utility lighters were available throughout the period in which the infringing lighters were on the market. Acme points out that under the *BIC Leisure* line of cases, the patentee still bears the burden of establishing a causal connection between the infringement and the lost profits. Given the presence of non-infringing alternatives, Acme argues that Calico failed to establish that it would have made the sales that Acme made "but for" the infringement.

We hold that Calico failed to demonstrate a reasonable probability that, in the absence of the infringing Ameritek lighters, Acme and/or its customers would have purchased Calico lighters rather than the non-infringing alternatives. *See Rite-Hite*, 56 F.3d at 1545. Under these facts, Calico's failure to establish that its lost sales were a direct result of Acme's sales of infringing lighters, and not due to the sales of non-infringing lighters, precludes the recovery of lost profits. *See Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1362−64 (Fed. Cir. 2001); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029 (Fed. Cir. 1996) (internal citations omitted).

There is no dispute that at all relevant times, Acme and Calico competed in the same market for utility lighters. But Calico and Acme were not the sole competitors in the market. At minimum, Easton Products, Beacon Products, BIC, and New York utility lighters also competed in the same market. J.A. 168. Given the crowded nature of this market, there is no reasonable basis to support an assumption that Calico would have made additional sales "but for" the presence of Ameritek lighters. The record evidence shows that there were 20 to 30 brands of utility lighters comparable to the Ameritek product. J.A. 189

Indeed, the district court acknowledged in its summary judgment ruling that Acme was able to switch to an alternative product and maintain its sales volume. J.A. 115. At trial, Mr. Giliotti offered unrebutted testimony

that Acme had an established practice of purchasing utility lighters from a California manufacturer that were interchangeable with the Calico lighters. J.A. 184; *see also* J.A. 189 (testifying that there were a variety of other suppliers whose utility lighters did not differ from the Ameritek product in terms of price, functionality, or consumer preference). A seamless substitution of the asserted product with a non-infringing, alternative product that is sourced from a third party supplier, is evidence of acceptable non-infringing alternatives under the second *Panduit* factor.

We *reverse* the district court's conclusion that under a market share theory Calico would have captured profits "but for" Acme's infringement.

### 3. Acme's Remaining Liability

In entering judgment, the district court held that Acme and Ameritek were jointly and severally liable for damages. On appeal, neither party challenges the district court's decision to impose joint and several liability. Acme agreed at oral argument that if we concluded as a matter of law that lost profits are not an available remedy, then a reasonable royalty of three cents per unit should be applied. Oral Argument at 18:06−18:44, No. 2008-1324, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2008-1324/all. Therefore, we *vacate* the lost profits award and reinstate the reasonable royalty award in the amount of $113,471. We have considered the parties' remaining arguments and conclude that they are without merit.

### III. CONCLUSION

For the foregoing reasons, we *affirm* the district court's legal conclusion that the infringement was not willful. We *reverse* the district court's legal conclusion that damages were available in the form of lost profits. We *vacate* the award of lost profits and *remand* for entry of judgment reflecting the jury's award of damages in the form of a reasonable royalty.

**AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED**

COSTS

No costs.